# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

CURTIS RUSH,

        *Petitioner*,

vs.

DAVID MCKUNE et al.,

        *Respondent*.

Case No. 08-3040-EFM

## MEMORANDUM AND ORDER

This matter is before the court on Petitioner Curtis Rush's (Petitioner) Motion for a Writ of Habeas Corpus, pursuant to 28 U.S.C. § 2254, which seeks to have his state conviction overturned. Petitioner argues his state conviction is unconstitutional because the state court violated his right to a speedy trial, and because judicial and prosecutorial misconduct precluded his receiving a fair trial. Petitioner further claims that his prior criminal history was not proven to a jury beyond a reasonable doubt, and therefore, resulted in an unconstitutional sentence (Doc. 1). Having carefully reviewed the arguments of the parties, the Court DENIES the motion.

### I. Factual and Procedural Background

On June 10, 2004, M.G.M. Masonry, a business in Kansas City, Kansas, was burglarized. It was ultimately determined that a telephone, answering machine, calculator, keys, credit cards, and paperwork were missing. Upon police arrival, they observed broken glass, visible fingerprints on a sliding glass window, and blood drops on both a computer and the floor inside the business. There

were no persons located within the premises. Police lifted fingerprints and collected samples of the blood, which were tested by the Kansas Bureau of Investigation. Based on a fingerprint match, police obtained a search warrant to collect a saliva sample from Petitioner to conduct a DNA comparison to the blood samples found in the business. The DNA result implicated Petitioner as the perpetrator of the burglary.

The Court adopts the Kansas Court of Appeals procedural background as follows:

> On June 16, 2004, [Petitioner] was charged with burglary and misdemeanor theft. He made his first appearance in the district court the following day. On June 24, 2004, the district court appointed an attorney to represent [Petitioner] but waived the BIDS fee noting that [Petitioner] did not want an attorney appointed.
> The following month, [Petitioner's] appointed attorney filed a motion to determine competency. The district court sustained the motion, but [Petitioner] refused to cooperate in the evaluation.
> On September 30, 2004, [Petitioner] filed his first of three pro se motions to discharge his case arguing he was not given a timely preliminary hearing.
> On October 21, 2004, the district court sustained the State's motion to determine competency and ordered another competency evaluation. Once again, [Petitioner] refused to cooperate with the evaluation. In response, on November 23, 2004, the district court ordered [Petitioner] committed to the State Security Hospital at Larned, Kansas, for the competency evaluation. On February 3, 2005, [Petitioner] was discharged from the State Security Hospital. At a hearing 12 days later, the district court determined that while [Petitioner] was competent to stand trial, he was unable to freely and voluntarily conduct his own defense.
> Rush's preliminary hearing occurred on March 17, 2005. Shortly before trial, the district court sustained [Petitioner's] motion to conduct his own defense. The district court ordered [Petitioner's] appointed attorney to be present, however, should [Petitioner] request assistance. During trial, the district court allowed defense counsel to take over the defense at [Petitioner's] request because he was having difficulty presenting his defense to the jury.

Petitioner was convicted by a jury on May 25, 2005, in the District Court of Wyandotte County, Kansas, of one count of non-residential burglary and one count of misdemeanor theft. He was sentenced to a total period of 29 months imprisonment, with 12 months of post-release supervision. Petitioner was credited for 390 days of time served. On direct appeal, the Kansas

Court of Appeals affirmed Petitioner's conviction.[1] The Kansas Supreme Court denied Petitioner's request for review. Petitioner subsequently filed for federal habeas corpus relief in which he alleges multiple violations of his constitutional rights, which are discussed below. Subsequent to filing for habeas relief, Petitioner was released from custody after completing his sentence.

## II. Jurisdiction

The Court exercises subject matter jurisdiction pursuant to 28 U.S.C. § 2254 and 28 U.S.C. § 1331. Two preliminary questions regarding jurisdiction are presented here. First, subsequent to filing his petition for relief, Petitioner was paroled in-state on March 4, 2008, and was discharged from parole supervision on September 8, 2008 for expiration of sentence.[2] A habeas petition, however, does not become moot simply because the petitioner is released from custody. To satisfy the "in-custody" provision of 28 U.S.C. § 2254, a petitioner need only be incarcerated at the time the petition is filed.[3] Petitioner filed his petition on February 1, 2008, while confined by the Kansas Department of Corrections for the convictions in question, and therefore, he has satisfied the "in custody" requirement of 28 U.S.C. § 2254.

The second jurisdictional question is whether Petitioner's subsequent release from custody defeats the case-or-controversy requirement under Article III, § 2 of the U.S. Constitution, causing the petition to become moot. The U.S. Supreme Court has stated that the "case-or-controversy requirement subsists through all stages of federal judicial proceedings, trial and appellate. . . . The

---

[1] *State v. Rush*, 2007 WL 1747871 (Kan. Ct. App. June 15, 2007) (Unpublished Opinion).

[2] Petitioner's parole status and discharge are not part of the court record. The Court obtained this information from the Kansas Department of Corrections online prisoner database. On March 10, 2008, Petitioner filed with the Court a notice of address change in which he listed a Kansas City, Kansas residence (Doc. 10).

[3] *Spencer v. Kemna*, 523 U.S. 1, 7 (1998).

parties must continue to have a 'personal stake in the outcome' of the lawsuit."[4]  This requires that the petitioner, throughout the entire habeas petition process, "must have suffered, or be threatened with, an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision."[5]

An incarcerated petitioner challenging his criminal conviction "always satisfies the case-or-controversy requirement, because the incarceration (or the restriction imposed by the terms of the parole) constitutes a concrete injury, caused by the conviction and redressable by invalidation of the conviction."[6]  But once the petitioner's sentence has expired, there must remain a "concrete and continuing injury" or other "collateral consequence" to the petitioner that the Court can redress in order for the action to be maintained.[7]  Because Petitioner is challenging his criminal conviction, the burden rests with the government to prove the absence of collateral legal consequences.[8]  The government has not met its burden with respect to demonstrating an absence of collateral legal consequences, and in fact, failed to address the issue beyond simply denying that Petitioner was in custody at the time of the State's response.  The Court takes judicial notice that the existence of a criminal record may have adverse consequences on Petitioner's employment prospects and on any future encounters that Petitioner may have, if any, with the criminal justice system.  The Court, therefore, finds that sufficient collateral consequence remains as a result of Petitioner's criminal convictions to preclude finding his habeas petition moot.

---

[4] *Id.*

[5] *Id.* (quoting *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477 (1990)).

[6] *Id.*

[7] *Id.*

[8] *Sibron v. New York*, 392 U.S. 40, 57-58 (1968).

### III. Exhaustion

Prior to ruling on the merits of a petitioner's claims, the Court must first determine if Petitioner exhausted claims at the state level. "The exhaustion requirement is satisfied if the federal issue has been properly presented to the highest state court, either by direct review of the conviction or in a post-conviction attack."[9] The exhaustion requirement is satisfied when a federal claim has been "fairly presented to the state courts" to the extent that the state courts had "an initial opportunity to pass upon and correct alleged violations of its prisoners' federal rights."[10] "'Fair representation' means that the petitioner has raised the 'substance' of the federal claim in state court," not that the petitioner cited "book and verse of the federal constitution."[11]

In the instant case, Petitioner filed a direct appeal with the Kansas Court of Appeals following his state court conviction in which he raised the same issues as those raised in his federal habeas petition. The Kansas Court of Appeals affirmed Petitioner's state court conviction. Petitioner subsequently requested review by the Kansas Supreme Court, which was denied. He has exhausted his claims at the state level.

### IV. Standard of Review

This court's consideration of collateral attacks on state criminal proceedings is circumscribed by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA).[12] Pursuant to the deferential standard set forth by the AEDPA, a federal habeas court may grant relief to a petitioner's claim that has been decided on the merits in state court if the state

---

[9] *Dever v. Kansas State Penitentiary*, 36 F.3d 1531, 1534 (10th Cir. 1994); 28 U.S.C. § 2254.

[10] *Picard v. Connor*, 404 U.S. 270, 275 (1971).

[11] *Bland v. Sirmons*, 459 F.3d 999, 1011 (10th Cir. 2006).

[12] *Martinez v. Zavaras*, 330 F.3d 1259, 1262 (10th Cir. 2003).

court decision: (1) was "contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States"; or (2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[13]

A state court decision is "contrary to" Supreme Court precedent when: (1) "the state court applies a rule that contradicts the governing law set forth in [a United States Supreme Court] case"; or (2) "the state court confronts a set of facts that are materially indistinguishable from a decision of [the United States Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent."[14] A state court's decision is an "unreasonable application" of Supreme Court precedent if "the state court identifies the correct governing legal principle from Supreme Court's decisions but unreasonably applies that principle to the facts of a prisoner's case."[15] Thus, "[u]nder § 2254(d)(1)'s 'unreasonable application' clause, . . . a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.[16] We also presume the state court's factual determinations are correct and the petitioner bears the burden to rebut the presumption by clear and convincing evidence.[17]

## V.  Analysis

---

[13] 28 U.S.C. § 2254(d)(1) & (2); *Lockyer v. Andrade*, 538 U.S. 63, 70 (2003).

[14] *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000); *see also Bell v. Cone*, 535 U.S. 685, 694 (2002).

[15] *Williams*, 529 U.S. at 413.

[16] *Id.* at 411; *see also Thomas v. Gibson*, 218 F.3d 1213, 1219-20 (10th Cir. 2000) (discussing *Williams*).

[17] 28 U.S.C. § 2254(e)(1); *Fields v. Gibson*, 227 F.3d 1203, 1221 (10th Cir. 2002).

In his petition for relief, Petitioner alleges: (1) violation of his Sixth Amendment right to a speedy trial; (2) prosecutorial misconduct in violation of the Fourteenth Amendment; (3) judicial misconduct in violation of the Fourteenth Amendment; (4) cumulative error based on the aforementioned Sixth and Fourteenth Amendment violations; and (5) trial court error by imposing a sentence based on Petitioner's criminal history score without first proving his prior convictions to a jury beyond a reasonable doubt.  The Court addresses each in turn.

### 1.  Right to a Speedy Trial

Petitioner claims that the state court violated his Sixth Amendment right to a speedy trial when it failed to conduct his preliminary hearing until 274 days after his arrest, and failed to bring him to trial for nearly a year after his arrest.[18]

In *Barker v. Wingo*,[19] the Supreme Court identified four factors when applying a Sixth Amendment balancing test to a pretrial delay: (1) the length of delay; (2) the reason for the delay; (3) the defendant's assertion of his right to speedy trial; and (4) the prejudice to the defendant.[20] Although no single factor in and of itself is sufficient to establish a Sixth Amendment speedy trial violation,[21] the length of the delay is considered to be the "triggering mechanism" that sets into motion a court's analysis of the remaining *Barker* factors.[22]  If the period of delay is not

---

[18]Although Petitioner initially asserts that his right to a speedy trial was violated by the state's failure to conduct his trial until nearly a year after his arrest, he only argues his speedy trial claim based on the delay between arrest and his preliminary hearing.  Because he failed to make argument on the delay to trial and because the Court finds the delay between arrest and preliminary hearing presumptively prejudicial, there is no need to address the delay to trial.

[19]407 U.S. 514 (1972).

[20]*Id.* at 530; *see also United States v. Tranakos*, 911 F.2d 1422, 1427 (10th Cir. 1990).

[21]*Barker*, 407 U.S. at 533.

[22]*Id.* at 530.

"presumptively prejudicial," there is no need to inquire into the other factors.[23] Because there is no "bright-line" rule for determining when a pretrial delay triggers a full *Barker* analysis, "the length of delay that will provoke such an inquiry is necessarily dependent upon the peculiar circumstances of the case."[24] The Kansas Supreme Court has adopted the *Barker* factors to evaluate an alleged violation of a defendant's constitutional right to a speedy trial.[25] Because the Kansas Court of Appeals identified the appropriate legal standard to apply when addressing Petitioner's speedy trial claim, this Court limits its review to whether the state appellate court unreasonable applied those standards.

### *a. Length of Delay*

Petitioner argues that the delay between his arrest and preliminary hearing of 274 days (nearly nine months) is presumptively prejudicial. Generally, federal courts have found a pretrial delay that does not approach one year between arrest and trial to not be presumptively prejudicial.[26] Kansas court decisions are also consistent with this holding.[27] However, determining whether a

---

[23]*Id.*

[24]*Id.* at 530-31.

[25]*See State v. Mathenia*, 262 Kan. 890, 894-95, 942 P.2d 624, 627 (1997) (stating the factors as "length of delay, reason for the delay, the defendant's assertion of his or her right, and prejudice to the defendant").

[26]*Doggett v. United States*, 505 U.S. 647, 652 (1992); *see also United States v. Dirden*, 38 F.3d 1131, 1138 (10th Cir. 1994) (finding seven and one-half month pretrial delay between arraignment and trial not presumptively prejudicial); *United States v. Kalady*, 941 F.2d 1090, 1095-96 (10th Cir. 1991) (finding eight month delay non-prejudicial); *Curry v. Kansas*, 2007 WL 2071767, at *2 (D. Kan. July 16, 2007) (finding more than nine month delay insufficient to trigger further *Barker* analysis); *Shaw v. Bruce*, 2003 WL 22939249, at *4 (D. Kan. Dec. 4, 2003) (finding eleven month lapse between arrest and trial non-prejudicial).

[27]*State v. Green*, 260 Kan. 471, 474, 920 P.2d 414 (1996) (delay of one year and two days as non-prejudicial)*; State v. Goss*, 245 Kan. 189, 193, 777 P.2d 781, 785 (1989) (delay in just over one year not presumptively prejudicial).

delay is presumptively prejudicial turns on the facts and circumstances of the particular case.[28]

In its analysis, the Kansas Court of Appeals noted that the distinguishing factor between the majority of the Kansas cases addressing delay in Sixth Amendment speedy trial claims and Petitioner's claim is that Petitioner's complaint specifically relates to a 274-day delay between his arrest and preliminary hearing, not the delay between his arrest and trial.[29] Based on this distinguishing circumstance, the state appellate court determined this delay to be presumptively prejudicial, warranting full examination of the remaining *Barker* factors.[30] This Court agrees, and will therefore address the remaining factors.

### *b. Reason for Delay*

The next prong of the *Barker* factor analysis is the reason the government assigns to justify the delay. A court should not weigh all reasons provided equally but should evaluate and weigh each reason individually based on the rationale and effect of the delay.[31] For example, "[a] deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the government."[32] Conversely, a request for continuance by a defendant should be charged to and weigh heavily against the defendant.[33] A valid reason, however, should serve as an

---

[28] *Barker*, 407 U.S. at 530-31.

[29] This Court notes, however, that while Petitioner also claims a speedy trial violation resulting from the 343 day delay between his arrest and trial in his issue statement of his petition, he fails to provide any argument for this additional claim. Even if Petitioner argued this assertion, this Court, based on both federal and state court precedent, would find this particular delay not presumptively prejudicial on its own. Nevertheless, because presumptive prejudice is found due to the delay between Petitioner's arrest and preliminary hearing, we proceed in addressing the remaining *Barker* factors.

[30] *Rush*, 2007 WL 1747871, at *2.

[31] *Barker*, 407 U.S. at 531.

[32] *Id.*

[33] *See id.*

appropriate justification for delay.[34]

Petitioner agrees that a number of continuances that contributed to the delay in question was at the request of his court appointed defense counsel; however, he argues that these delays should be attributed to the state because the trial court "forced" this counsel upon him. Petitioner asserts that he was clear from the onset of his case that he wanted to represent himself and did not need the assistance of counsel. The trial court nevertheless appointed Debera Erickson as counsel for Petitioner on June 24, 2004. As the Kansas Court of Appeals appropriately noted, the record does not reflect whether Petitioner informed the court at that time of his desire to represent himself, nor is the record clear as to whether Petitioner made this request known to the trial court before this time.[35]

Petitioner's appointed counsel moved the trial court for a competency hearing on the grounds that Petitioner was showing signs of confusion and refused to meet with her. The trial court granted the motion, ordering Petitioner to undergo evaluation with a licensed clinical psychotherapist. Petitioner refused to cooperate with the evaluation, but later agreed to meet with Ms. Erickson, after which she informed the trial court that she believed Petitioner to be competent to stand trial. The State apparently was not convinced, and moved the court for a competency evaluation, which the trial court granted. Petitioner again refused to cooperate, and the trial court then committed

---

[34]*Id.*

[35]Although Ms. Erickson indicated in Petitioner's Motion for Hearing to Determine Competency that Petitioner "has told the jail staff along with Judge Way, who did the [petitioner's] first appearance, that he does not need an attorney as he is not charged with a crime[,] he is only in jail for traffic matters[,]" the record itself does not indicate that Petitioner relayed this desire during his first appearance to Judge Way, nor does it demonstrate that his desire for self-representation was presented to the trial court before Ms. Erickson's appointment. However, during the February 15, 2005 competency hearing, Ms. Erickson referenced her appointment order, which this Court does not have before it, as containing a reference to Petitioner's objection to the court appointing counsel. Nevertheless, even if Petitioner informed Judge Way that he did not want a court appointed attorney, his statements indicated that he was unaware of the charges pending against him, which supports the court's decision to appoint counsel for the felony matter.

-10-

Petitioner to the State Security Hospital at Larned, Kansas, to determine whether he was able to understand the nature and purpose of the proceedings against him, assist his attorney in his legal defense, and whether he possessed the mental state required as an element of the offenses charged. At the same time, the trial court continued to toll the speedy trial period until Petitioner's competency could be determined.

We agree with the state court's analysis under this factor in that there are a number of justifiable reasons for the 274 day delay between Petitioner's arrest and preliminary hearing. The Court acknowledges the possibility that Petitioner may not have agreed with the trial court to appoint counsel; however, as the Supreme Court has noted, "[i]t has long been accepted that a person whose mental condition is such that he lacks the capacity to understand the nature and object of the proceedings against him, to consult with counsel, and to assist in preparing his defense may not be subject to a trial."[36] Accordingly, a court has the responsibility to ensure that a defendant's mental capacity is such so as to not offend due process. Such appears to be the case in this instance.

Petitioner's counsel alleged that Petitioner was showing signs of confusion and indicated concern that he did not understand that he was charged with the crimes of burglary and theft rather than simple traffic charges. This claim resulted in the first delay to attempt to determine Petitioner's mental state. Despite Ms. Erickson's statement that she was comfortable with Petitioner's level of competency, the State's subsequent motion to for his evaluation to ensure sufficient competency was justified. There is no claim, nor is there any indication in the record, that the State's motion was to delay proceedings or prejudice Petitioner in any manner. Instead, the record supports finding that the trial court's actions were to safeguard Petitioner's due process rights. The subsequent delays

---

[36] *Drope v. Missouri*, 420 U.S. 162, 171 (1975).

-11-

continued to be the result of Petitioner failing to cooperate with his competency evaluations, of which he cannot now justifiably complain. Moreover, Petitioner's conduct provided a sufficient basis for the trial court to both order review of Petitioner's competency and to retain Ms. Erickson as his counsel.[37]

At the February 15, 2005, competency hearing, the trial court determined that Petitioner was competent to stand trial. Petitioner's preliminary hearing was held about one month later, and his trial was held less than three months after the preliminary hearing. As the Kansas Court of Appeals properly observed, the State promptly prosecuted the case after Petitioner's competency was determined, which further indicates that the delay was not an attempt to impede or prejudice Petitioner.

### *c. Defendant's Assertion of Right*

The State does not contest that Petitioner asserted his right to a speedy trial. He asserted his right three times prior to his preliminary hearing. The Kansas Court of Appeals concluded that Petitioner's assertion of his speedy trial right was timely, but "[g]iven [Petitioner's] conduct which effectively prolonged the litigation . . . the concomitant assertion of his speedy trial rights is of little weight in [Petitioner's] favor."[38] We agree with the appellate court's analysis, and find that this factor weighs only slightly in Petitioner's favor.

### *d. Prejudice to the Defendant*

---

[37]A defendant must knowingly and intelligently waive the right to counsel. This strict standard applies even after a defendant receives court appointed counsel. *See Fields v. Wyrick*, 464 U.S. 1020, 1022-23 (1983). A defendant mentally competent to stand trial does not mean that he is mentally competent to defend himself. *See Indiana v. Edwards*, 128 S.Ct. 2379, 2380 (2008). Permitting a defendant to proceed pro se "who lacks the mental capacity to conduct his defense without the assistance of counsel . . . may undercut the most basic of the Constitution's criminal law objectives, providing a fair trial" *Edwards*, 128 S.Ct. at 2381 (internal citations omitted).

[38]*Rush*, 2007 WL 1747871, at *4.

A court should access prejudice to the defendant "in the light of the interests of defendants which the speedy trial right was designed to protect."[39] The Supreme Court has identified three such interests that the Sixth Amendment right to speedy trial was meant to protect: (1) to prevent oppressive pretrial incarceration; (2) to minimize anxiety and concern of the accused; and (3) to limit the possibility that the defense will be impaired.[40] The most important of these interests is the impaired defense, because "the inability of a defendant adequately to prepare his case skews the fairness of the entire system."[41]

The Kansas Court of Appeals evaluated each of these factors, and this Court finds no error in that analysis.[42] Although Petitioner claims that his commitment to the state hospital for evaluation was "embarrassing," he provides no other argument on how such embarrassment adversely affected his psychological well being or had a negative impact on his defense. Moreover, Petitioner has made no claim, nor has he provided this Court with any information, to establish prejudice based on loss of witness testimony or any other evidence to demonstrate that his defense was impaired by the delay.

In light of the foregoing, we find that the Kansas Court of Appeals reasonably applied the *Barker* factors to Petitioner's speedy trial claim.

### 2. Prosecutorial Misconduct

---

[39]*Barker*, 407 U.S. at 532.

[40]*Id.* (citing *United States v. Ewell*, 383 U.S. 116, 120 (1966)).

[41]*Id.*

[42]The Court notes that while Petitioner structures his argument to this Court slightly different from that raised with the Kansas Court of Appeals, it is substantively the same, with one exception. Petitioner indirectly raises for the first time the issue of a defendant's right to be present at all times during litigation. The fact that he cites no specific instance is irrelevant, as Petitioner has failed to exhaust his claim at the state level. *See Dever*, 36 F.3d at 1534; 28 U.S.C. § 2254. Accordingly, this Court declines to address this issue.

Petitioner alleges that he was denied his constitutional right to a fair trial when, during cross examination, the prosecutor required him to explain evidence and to comment on the credibility of the officers involved in the case.  Petitioner argues that this exchange shifted the burden of proof and invaded the province of the jury.

In considering a claim of prosecutorial misconduct on federal habeas review, the question is whether the prosecutor's conduct was so egregious as to render the entire proceedings fundamentally unfair.[43]  Federal habeas relief addresses only egregious misconduct that would amount to a constitutional denial of due process.[44]  In considering a claim of prosecutorial misconduct, the court considers "the totality of the circumstances, evaluating the prosecutor's conduct in the context of the whole trial."[45]  To warrant a new trial, prosecutorial misconduct in the form of improper comment or questioning "must be so pronounced and persistent that it permeated the entire atmosphere of the trial."[46]

On direct examination, Petitioner had the following exchange with his attorney:

Q. Okay.  Well, let me ask you this, Mr. Rush.  Have you ever been in M.G.M. building?

A. No. I never been in there.

Q. Do you know how, if it was true, do you know how your fingerprints would have been

---

[43]*Short v. Sirmons*, 472 F.3d 1177, 1195 (10th Cir. 2006) (citing *Donnelly v. DeChristoforo*, 416 U.S. 637, 642-48 (1974)); *see also Smith v. Phillips*, 455 U.S. 209, 219 (1982) (touchstone of due process analysis in alleged prosecutorial misconduct is fairness of trial, not culpability of prosecutor).

[44]*Smith*, 455 U.S. at 221.

[45]*Cummings v. Evans*, 161 F.3d 610, 618 (10th Cir. 1998) (quotation omitted).

[46]*United States v. Jackson*, 876 F. Supp. 1188, 1199 (D. Kan. 1994) (quoting *United States v. Blevins*, 555 F.2d 1236, 1240 (5th Cir. 1977), *cert. denied*, 434 U.S. 1016 (1978)); *see also United States v. Caballero*, 277 F.3d 1235, 1245 (10th Cir. 2002) (stating that "reversal is required only if there is reason to believe it influenced the jury's verdict.").

there?

    A. I don't know how they got there. My fingerprints were never there. I know they wasn't. I never been down there.

    Q. And your blood wouldn't have been there?

    A. No.

    Q. And you believe that the officers have testified to this solely for the purpose of prohibiting you from continuing your case?

    A. Yeah.

The following limited exchange, which is the only basis Petitioner cites for his complaint, then took place between the prosecutor and Petitioner on cross examination:[47]

    Q. Okay. And you say that you've never been to M.G.M. before?

    A. No, I've never been there before.

    Q. Do you have an explanation why your fingerprints and blood was found at M.G.M.?

    A. My fingerprints and blood was never found down there.

    Q. You heard the officers testify it was?

    A. That's what they saying, that don't mean it's true just because they said it.

    Q. You're saying the officers lied in court? Is that what you're saying?

    A. Yeah. Yeah. Exactly.

    Q. Okay. Those are all my questions.[48]

    In light of the questions posed to Petitioner on direct by his counsel, it was not improper for

---

[47] The Court notes that although Petitioner only identified a limited portion of the exchange in his petition, the Court must analyze the exchange in the full context as presented to the jury.

[48] Trial Tr. vol. V, 183-84.

the prosecution to clarify the responses made by Petitioner during direct examination, and that inquiry was relevant based on the evidence already presented to the jury.[49]  Moreover, after reviewing the record, the prosecutor's questions in the context of the entire trial convinces the Court that this limited exchange is far from being so pronounced or persistent that it "permeated the entire atmosphere of the trial" so as to warrant a new trial.  Accordingly, the Kansas Court of Appeal's ruling on this issue was not contrary to nor did it involve an unreasonable application of United States Supreme Court precedent, and therefore, Petitioner is not entitled to habeas relief on this ground.

### 3.  Judicial Misconduct

Petitioner next claims that his right to a fair trial was violated when the trial judge repeatedly interrupted him when he was attempting to introduce evidence, thereby creating an appearance of partiality before the jury and demonstrating prejudice toward Petitioner.  Petitioner argues that the judge interrupted him "no less than 11 times," often *sua sponte*, that varied from stopping Petitioner to informing him that his evidence was irrelevant.

To demonstrate judicial bias, Petitioner must show either: (1) actual bias; or (2) "that circumstances were such that an appearance of bias created a conclusive presumption of actual bias."[50]  While it is true that a judge's comments before a jury are subject to "special scrutiny" on a claim of bias,[51] those comments must be highly prejudicial before they will be deemed to show

---

[49]*See Caballero*, 277 F.3d at 1249-50; *see also United States v. Young*, 470 U.S. 1, 12-13 (1985).

[50]*Fero v. Kerby*, 39 F.3d 1462, 1478 (10th Cir. 1994).

[51]*United States v. Dellinger*, 472 F.2d 340, 386 (7th Cir. 1972), *cert. denied*, 410 U.S. 970 (1973).

judicial bias.[52] A trial judge clearly has broad discretion to control the pace and conduct of trial, and "judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge [unless] they reveal such a high degree of favoritism or antagonism as to make fair judgment impossible."[53]

After reviewing the trial transcript, this Court agrees with the Kansas Court of Appeal's analysis, and finds that it reasonably applied federal law in holding that the judge's conduct did not violate Petitioner's constitutional right to a fair trial. Petitioner represented himself through most of his trial, and the record indicates that he had some difficulty with complying with the rules of evidence and other trial procedures that necessitated intervention by the court. There is no indication that the judge's comments were rude or directed at Petitioner so as to imply that the theory of his case was without merit, but instead dealt with certain evidence that Petitioner was attempting to introduce. Further, as a result of Petitioner's difficulty in properly presenting his case, he had Ms. Erickson step in toward the end of trial to take over his defense. As the state appellate court properly observed, the trial judge commented that he was not being impatient or attempting to prevent Petitioner from presenting his evidence, but was trying to facilitate his efforts to do so. Considering the context of entire trial, the comments made by the judge were clearly nonprejudicial in a constitutional sense. In addition, Petitioner's choice to proceed pro se does not relieve him from the requirement to comply with the same procedural rules that govern all other litigants, and accordingly, the trial judge was within the bounds of reasonableness when he corrected Petitioner

---

[52]*Cf. Liteky v. United States*, 510 U.S. 540, 555 (1994) ("[J]udicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge. . . . [But] they will do so if they reveal such a high degree of favoritism or antagonism as to make fair judgment impossible.").

[53]*United States v. Shelton*, 736 F.2d 1397, 1404 (10th Cir. 1984); *accord Liteky*, 510 U.S. at 555.

as he did in this case.[54]  Therefore, the Kansas Court of Appeal's determination that the state trial judge did not violate Petitioner's constitutional right to a fair trial was neither contrary to, nor an unreasonable application of United States Supreme Court precedent.

### 4.  Cumulative Error

Because this Court finds no error in the Kansas Court of Appeals rulings as Petitioner has challenged, his claim of cumulative error fails.  When addressing a claim of cumulative error, a court should "evaluate only the effect of matters determined to be error, not the cumulative effect of non-errors."[55]  As the Court finds no error with regard to Petitioner's claims, we find this claim is without merit.

### 5.  Sentence

Petitioner lastly claims that the trial court erred by sentencing him to a higher sentence based on a criminal history without first proving that criminal history to a jury beyond a reasonable doubt. He argues that had the state court not considered his prior convictions in this case, he would have fallen in a border sentencing box and would then have likely received a decreased sentence.

The Court finds that this claim by Petitioner is moot because of his release from custody upon completing his sentence.  As previously explained, there must remain a "concrete and continuing injury" or other "collateral consequence" to Petitioner that the Court can redress by a favorable judicial decision.[56]  Because the Court has found no other error to remand Petitioner's case to the state court and because Petitioner has already completed his sentence, there is no continuing

---

[54]*See Ogden v. San Juan County*, 32 F.3d 452, 455 (10th Cir. 1994) (citing *Nielsen v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994)).

[55]*United States v. Rivera*, 900 F.2d 1462, 1471 (10th Cir. 1990).

[56]*Spencer*, 523 U.S. at 7.

injury or collateral consequence that this Court can redress. Even if his claim was not moot, we find no error in the Kansas Court of Appeals application of law in its analysis, and would accordingly deny his claim. Therefore, Petitioners claim that the state court erred by imposing a higher sentence based on his criminal history is denied as moot.

IT IS THEREFORE ORDERED that Petitioner Curtis Rush's Motion for Writ of Habeas Corpus be DENIED.

Dated this 17th day of February, 2009, in Wichita, Kansas.

/s Eric F. Melgren
ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE